After a jury trial, the defendant, Curtis Sullivan, was convicted of two counts of possession of a firearm without a license, two counts of carrying a loaded firearm, one count of unlawful possession of ammunition, and one count of negligent operation of a motor vehicle. The defendant then pleaded guilty on the subsequent offense portions of the two indictments charging possession of a firearm. The defendant argues on appeal that (1) the trial judge erred in denying his motions for required findings of not guilty on the firearms charges, and (2) trial counsel was ineffective. We affirm.
Background. We summarize the facts as the jury could have found them. On the evening of September 26, 2012, David MacMillan was walking his dog on Fort Avenue, a street adjacent to Highland Park in Roxbury, when he noticed a green Lexus automobile idling near the park on the opposite side of the street from where cars normally parked. He took note of the license plate, 979KY9. A few minutes later MacMillan heard four to five gunshots coming from the park. As he was calling 911, he saw four young black men jog from the park, enter the Lexus, and drive away.
Boston police Officers Brian Johnson, Janet Lewis, and Mathew Wosny were standing nearby when they heard gunshots. After learning from dispatch that a "shot spotter" device went off at 6 Fort Avenue Terrace, they began to drive towards that location in an unmarked police cruiser. While driving on Cedar Street, the officers noticed a green Lexus approaching; they recognized it because they had stopped the vehicle five days earlier. The officers made a U-turn to follow the Lexus. The Lexus accelerated down Cedar Street and did not stop at a red light, instead turning right onto Washington Street. The officers activated their cruiser's lights and sirens to signal the driver of the Lexus to stop. Instead, the driver turned left onto Dale Street and sped up. The Lexus next turned left onto Regent Street and the officers lost sight of the vehicle, but regained it as the Lexus traveled up Regent Street, turned right onto Circuit Street, and pulled over.
When the officers approached the Lexus, the defendant was seated in the driver's seat with the front driver's side window down. The front passenger window also was rolled down; both rear windows were up. The officers removed the four occupants from the car, and while doing so received radio transmissions that a witness from the scene of the shooting had seen four men "jump" into a green Lexus with a particular license plate and drive towards Cedar Street. The radioed license plate matched that of the Lexus the officers had stopped.[2] The officers then searched the vehicle and found a bag containing .22 caliber ammunition in the front console.
Officers tracing the Lexus's path found two firearms. One firearm was a .22 caliber Llama, with one round of ammunition in the chamber and four additional rounds in a damaged magazine, located next to a car parked opposite 124 Regent Street. This firearm was found on the driver's side of the path driven by the defendant. The piece of the magazine that was broken off was found near the firearm. The officers also found a loaded .40 caliber Glock firearm, with one round of ammunition in the chamber and a magazine holding five additional rounds, on the lawn of 90 Regent Street. This firearm was on the passenger side of the path taken by the Lexus. The .40 caliber firearm was forensically matched to a reasonable degree of ballistic certainty to three shell casings found at the scene of the shooting in Highland Park.
Discussion. 1. Sufficiency of the evidence. The defendant moved for required findings of not guilty at the conclusion of the Commonwealth's case; the judge denied the motions. On appeal, the defendant argues that the evidence was insufficient to establish that he constructively possessed the two firearms.
In evaluating the sufficiency of evidence, we examine it to determine whether, viewing the evidence in the light most favorable to the Commonwealth, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). There must be evidence that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control" over the firearms. Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004) (quotation omitted). Presence in a vehicle containing a firearm is not enough to prove constructive possession, but presence together with "other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " Commonwealth v. Albano, 373 Mass. 132, 134 (1977), quoting from United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976). See Commonwealth v. Brzezinski 405 Mass. 401, 409-410 (1989) (circumstantial evidence and permissible inferences drawn therefrom can prove constructive possession). We conclude that the evidence was sufficient as a matter of law to support the jury's verdicts.
A jury reasonably could have inferred that the defendant exercised sufficient dominion and control over the two loaded firearms to constructively possess them. Both firearms were found along the path traveled by the defendant's vehicle, and the police did not see any other person or moving vehicle while following him on Regent Street. The magazine of one firearm was damaged and the broken-off part was found lying nearby. These facts support an inference that the firearms were thrown from the defendant's vehicle. Additionally, both front windows of the Lexus were rolled down, supporting an inference that the firearms were thrown from the front seats of the car the defendant was driving. See Commonwealth v. Jefferson, 461 Mass. 821, 826-827 (2012) (evidence sufficient to prove both driver and front seat passenger in car jointly possessed firearm that was found damaged along their flight path even though no one had seen firearm being thrown from vehicle). A rational trier of fact could infer that the defendant recognized, from being pulled over a few days before, the unmarked police car giving chase and that the defendant sped away to throw the firearms so that they would not be found during a stop. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 826 (circumstantial evidence reasonably permitted inference that defendants had thrown contraband firearm from vehicle). Finally, the shell casings found at the park and the ammunition in the vehicle matched the firearms, permitting the jury to infer that the firearms had been in the vehicle. Although a seventeen year old backseat passenger in the vehicle said he would "take the heat" for the firearms, more than one inference may be drawn from that statement and, in any event, possession need not be exclusive. See Commonwealth v. Beverly, 389 Mass. 866, 870 (1983). The evidence at trial was therefore sufficient as a matter of law to support the defendant's convictions of the firearms charges.
2. Ineffectiveness of counsel. To evaluate ineffective assistance of counsel, we look to see whether "there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Such a defense is substantial if there is "a serious doubt whether the jury verdict would have been the same had the defense been presented." Commonwealth v. Millien, 474 Mass. 417, 432 (2016). The defendant raises his claim of ineffective assistance of counsel on direct appeal, which is "the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002).
The defendant argues that trial counsel was ineffective for allowing the Commonwealth to improperly introduce prior bad act evidence of the defendant's previous police stops, including one five days earlier "[f]or a similar infraction." The defendant argues that this testimony may have impermissibly caused the jury to infer that the defendant was stopped previously for a firearms violation. We disagree that trial counsel's failure to object to a single question about the defendant's earlier "infraction" constitutes serious incompetency, inefficiency, or inattention. When the prosecutor asked Officer Johnson if he had seen the green Lexus the defendant was driving before the day in question, he answered "[y]es." The prosecutor asked the officer when he had seen it, and he answered, "We've stopped this car a few different times in the past. The more recent time was I believe five days prior to that." The prosecutor then asked, "[f]or a similar infraction?" -- and Officer Johnson responded "yes," and indicated he had been driving the same unmarked cruiser. Officer Johnson shortly went on to describe that, on the day in question, it was the defendant's speeding up and taking a right turn at a red light without stopping that prompted the officers to turn on their lights and sirens.
When considered in context, it would have been reasonable for counsel to view the question as referring to a traffic infraction and not a firearms violation. The officer mentioned earlier stops, and then described how the defendant sped up and ran a red light; for that reason, a reasonable jury would likely infer that the previous "infraction" was also a traffic stop. Testimony about the previous stop was admissible to show that the defendant recognized the particular unmarked police vehicle, and allowed the jury to infer that this knowledge caused him to speed away. Given the record, we cannot conclude that trial counsel was ineffective. See Millien, 474 Mass. at 432-433.
Judgments affirmed.

At one point Officer Johnson testified that he "believe[d]" the license plate number was broadcast as "97YKY9." This minor discrepancy does not alter our conclusion as to sufficiency.