## COMMONWEALTH *vs.* DAVID A. LAPERLE.

Middlesex. November 14, 1984. — March 4, 1985.

Present: KASS, ROSE, & SMITH, JJ.

*Controlled Substances.*

At the jury-waived trial of an indictment for possession of cocaine with intent to distribute, the judge was entitled to infer from the defendant's statements to police officers impliedly acknowledging that he kept controlled substances in his apartment, and from his presence in the apartment when the officers searched it, that the defendant possessed cocaine residue found therein. [426]

At the jury-waived trial of an indictment for possession of cocaine with intent to distribute, evidence that the defendant attempted to flee his apartment when police arrived to execute a search warrant, that various objects in the apartment bore traces of cocaine residue, and that paraphernalia associated with the use or distribution of cocaine were concealed in the apartment permitted the judge to infer that the defendant knew cocaine was present. [426-427]

At the trial of an indictment for possession of cocaine with intent to distribute, evidence that certain items associated with the distribution of cocaine, namely two bottles of cutting powder, a supply of wrapping paper, and a precision scale bearing traces of cocaine residue, were found by police in the defendant's apartment was sufficient to warrant the inference that a merchantable quantity of cocaine had previously been present and that the defendant had intended to distribute it. [427-429]

INDICTMENT found and returned in the Superior Court Department on August 5, 1982.

The case was heard by *Hiller B. Zobel, J.*

*Joseph F. Annunziata, Jr.,* for the defendant.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

ROSE, J. Following a jury-waived trial, the defendant was convicted of possession of cocaine with intent to distribute. G. L. c. 94C, § 32A(*a*). He appeals on the ground that the

evidence against him, together with the inferences that could reasonably be drawn therefrom, was insufficient to permit the fact finder to infer the existence of the essential elements of the offense beyond a reasonable doubt. *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). We review the evidence to ascertain whether the Commonwealth satisfied its burden of proof as to each element of the crime, that is, that LaPerle (1) possessed cocaine, (2) knowingly or intentionally, and (3) with intent to distribute.

On the basis of the Commonwealth's evidence, the trial judge could have found the following. Pursuant to a search warrant, the Marlborough police knocked on a door of an apartment and identified themselves. They heard noises inside, but no one answered the door. Entering forcibly, they apprehended LaPerle, who was then endeavoring to leave through another door. They read to him both the search warrant and Miranda warnings. He then told the police that "what he had was on the table," pointing to a covered vase found to contain a quantity of marihuana cigarette butts. The police arrested him and searched the apartment.

On top of a chest in the kitchen, the police found a mirror on the surface of which rested a short straw and razor blades. On that mirror was a perceptible "white residue" that a State laboratory subsequently identified as cocaine. On top of a chest there was a wooden box in which the police found two packages described as "cocaine wrapping papers" as well as a small vial and a miniature spoon. Upon the latter two items the State laboratory detected a residue of cocaine. In a hallway closet police came upon a box that contained two bottles of a substance identified as cutting powder (labeled "Superior Cut" and "Superior Sparkle Cut") and a precision scale. The pan of that scale contained a residue that, on laboratory analysis, proved to be cocaine. The total weight of the residue found in the apartment was not determined. According to a State chemist, the amount was visible to the naked eye but probably was not susceptible to measurement on an instrument less sensitive than an analytical balance.

1. *Possession*. From the following facts the judge could have inferred that LaPerle knowingly and intentionally possessed cocaine. The defendant was present in the apartment at the time police executed the search warrant. See *Commonwealth v. Rivera*, 6 Mass. App. Ct. 947 (1978); *Commonwealth v. Aparicio*, 14 Mass. App. Ct. 993 (1982). He impliedly acknowledged that he kept controlled substances in the apartment and knew of their locations by telling the police that the marihuana in the vase was "what he had." Cocaine residue was found in the apartment.

Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom. *Commonwealth v. Cohen*, 6 Mass. App. Ct. 653, 658 (1978). Possession implies that a defendant has exclusive or joint control and power over the substance. *Commonwealth v. Deagle*, 10 Mass. App. Ct. 563, 567 (1980). The fact finder was entitled to infer from LaPerle's utterances, *Commonwealth v. Mott*, 2 Mass. App. Ct. 47, 54 (1974), and from his presence in the apartment, that the defendant possessed the cocaine found therein. See *Commonwealth v. Gill*, 2 Mass. App. Ct. 653 (1974); *Commonwealth v. Nichols*, 4 Mass. App. Ct. 606 (1976); *Commonwealth v. Andrews*, 12 Mass. App. Ct. 901 (1981); *Commonwealth v. Kinney*, 12 Mass. App. Ct. 915 (1981).[1]

2. *Knowledge*. When the police arrived, LaPerle attempted to flee. Some of the residue was visible on a mirror "right on top of" a chest. Some residue was present on objects stored out of sight. Added to this was the presence of paraphernalia from which the judge could infer the use or distribution of cocaine: the vial, miniature spoon, short straw, razor blades, cutting powder, wrapping papers and precision scale. Knowledge "may be, and generally is, proved by circumstantial evidence; and it may be inferred from a great variety of circum-

---

[1] While it does not appear from the oral argument, briefs, or the transcript that the question of LaPerle's dominion or control over the cocaine was a seriously contested issue, we think it would have been a better practice for the Commonwealth to introduce direct evidence that LaPerle resided in the apartment. Cf. *Commonwealth v. Andrews, supra.*

stances." *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 273 (1944). The trial judge could infer consciousness of guilt from LaPerle's flight. From the concealed paraphernalia, he could infer LaPerle's knowledge that cocaine residue remained on some items and his concommitant urge to secrete evidence suggestive of distribution activity. See *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. at 613.

3. *Distribution.* The evidence of LaPerle's intent to distribute cocaine consisted of the two bottles of cutting powder, the wrapping papers, and the scale, upon the pan of which there was a residue of cocaine. Intent is a factual matter that may be proved by circumstantial evidence. *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970). Packaging materials and drug paraphernalia are relevant to show the defendant's predisposition toward distribution. *Commonwealth* v. *Davis,* 376 Mass. 777, 788 (1978). *Commonwealth* v. *Tucker,* 2 Mass. App. Ct. 328, 330 (1974). *Commonwealth* v. *Wooden,* 13 Mass. App. Ct. 417, 423-424 (1982). Where, as here, the amount of cocaine alone is insufficient to raise the inference of intent to distribute, evidence of the presence of "paraphernalia" may be necessary to sustain a conviction. See *ibid.*; *Commonwealth* v. *Tripp,* 14 Mass. App. Ct. 997, 998-999 (1982).

On the basis of the evidence the trial judge commented that the "scale was kept not to measure out individual portions for personal use, something which could be done, . . . by reasonable inference of an ordinarily intelligent and sagacious mind, by eye, but rather for sale, because the amount to be sold makes a difference." The prosecution was singularly passive in putting questions to Detective Brodeur, the prosecution's only witness, about what inferences he, as an experienced narcotics investigator, drew from the paraphernalia seized. See *Commonwealth* v. *Sendele,* 18 Mass. App. Ct. 755, 759 n.14 (1984). Only after the defendant recalled Brodeur did the Commonwealth, on cross-examination, ask Brodeur how the cutting powder was used. That evidence, however, came in after the Commonwealth had rested and is of no use to the Commonwealth in appraising the merits of the defendant's timely motion

for a required finding of not guilty at the close of the Commonwealth's case.

The defendant asserts that under *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400 (1940), this evidence equally supports an inference of personal use; therefore, neither inference "can be said to have been established by legitimate proof." The inferences to which the defendant assigns weight equal to those drawn by the trial judge are as follows: being of a fastidious bent, LaPerle measured his cocaine after the fashion of imbibers who measure their alcohol in a shot glass, and also to insure that he received a full measure from his vendor; the cutting powder he used as a species of "hamburger extender," the increased volume of this extended cocaine necessitating extra wrapping papers. The trial judge could properly have concluded, however, that these suggested inferences were extremely unlikely. In these circumstances an appellate court will not upset the trial judge's evaluation of the evidence.

At oral argument much was made of the contention that there can be no intent to distribute a "residue" of cocaine. This argument erroneously presupposes that G. L. c. 94C, § 32A(*a*), requires possession of cocaine with intent to distribute *the quantity possessed.* The statute, however, contains no such requirement.[2] The quantity of a controlled substance alone may be sufficient circumstantial evidence to raise an inference of intent to distribute. See *Commonwealth* v. *Rugaber,* 369 Mass. 765, 770 (1976); *Commonwealth* v. *Scala,* 380 Mass. 500, 511 (1980); *Commonwealth* v. *Bongarzone,* 390 Mass.

---

[2] We do not view language in *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. at 613, as sustaining the defendant's contention. That case concerned the presence of a large quantity of heroin but no paraphernalia. Our discussion of the elements of the crime naturally reflected the existence of a merchantable quantity of heroin. An examination of related sections of G. L. c. 94C, § 34 (possession), and § 32E(*b*) (trafficking), reveals that the Legislature has imposed a minimum quantity requirement of twenty-eight grams with respect only to "trafficking." Moreover, any twenty-eight gram *mixture* containing cocaine will support a trafficking conviction. See *Commonwealth* v. *Beverly,* 389 Mass. 866, 868-869 (1983). The Legislature has imposed no minimum quantity requirement in § 32A(*a*) (possession with intent to distribute).

326, 349-350 (1983). Quantity, however, is not the only relevant circumstantial evidence of intent to distribute. See *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. at 609; *Commonwealth* v. *Wooden,* 13 Mass. App. Ct. at 422-424. "Each instance of a prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide. . . ." *Commonwealth* v. *Sendele,* 18 Mass. App. Ct. at 758. Nothing in our case law suggests that legitimate proof of intent to distribute a controlled substance consists only of the existence of a distributable amount of that substance. The amount of cocaine found in LaPerle's apartment affects the weight, not the sufficiency, of the evidence. Cf. *Commonwealth* v. *Sepulveda,* 6 Mass. App. Ct. 868, 869 (1978), holding that three foil packets of heroin, together with five empty foil packets, two of which contained traces of heroin, was sufficient to warrant submitting the case to the jury on the question of intent to distribute.

In this case we have the existence of a residue of cocaine on several items associated with cocaine use or distribution. We have the pan of the scale, containing residue, a quantity of cutting powder far in excess of the amount, if any, needed to "cut" the residue, as well as two packages of wrapping papers. This evidence, taken as a whole, permits inferences that a merchantable amount of cocaine had previously been present, and that LaPerle had intended to distribute it.

*Judgment affirmed.*