## COMMONWEALTH *vs.* CARIEANN M. SCHMIEDER.

No. 01-P-978.

Barnstable. February 6, 2003. - June 11, 2003.

Present: RAPOZA, SMITH, & GREEN, JJ.

*Controlled Substances. Evidence,* Constructive possession. *Practice, Criminal,* Required finding.

At the trial of criminal complaints charging the defendant with possession of a class B controlled substance with intent to distribute and with possession of various controlled substances, the judge erred in denying the defendant's motion for a required finding of not guilty, where the Commonwealth's evidence failed to link the defendant to the bedroom in which the drugs were found and otherwise was insufficient for a finding that the defendant possessed the drugs. [302-305]

COMPLAINTS received and sworn to in the Orleans Division of the District Court Department on October 6, 1999, and January 26, 2000.

The cases were tried before *Joan E. Lynch, J.*

*Donald A. Brisson* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

GREEN, J. After the police found drugs in an upstairs bedroom of a condominium unit in which the defendant was present, the defendant was arrested, charged, and, following a jury trial in the District Court, convicted of possession of a class B substance with intent to distribute, in violation of G. L. c. 94C, § 32A(*a*), and of possession of various controlled substances, in violation of G. L. c. 94C, § 34. On appeal, the defendant contends that the trial judge erred in denying her motion for a

required finding of not guilty.[1] We agree that the evidence was insufficient to support her convictions and reverse.

1. *Facts.* In reviewing the defendant's motion for a required finding of not guilty, we examine the evidence as it stood at the close of the Commonwealth's case, viewed in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979); *Commonwealth* v. *Ruci*, 409 Mass. 94, 96 (1991). So viewed, the evidence may be summarized as follows.

On October 5, 1999, between 7:30 P.M. and 8:00 P.M., several police officers went to a condominium unit at 14A Old Colony Way in Provincetown to execute a search warrant.[2] After looking around the exterior of the property, the officers knocked on the door, and the defendant answered. Inside the unit was the defendant, along with Christopher Festa and an unidentified woman. Festa and the woman were searched and released after about one-half an hour.

The officers accompanied the defendant to the kitchen, where one officer searched a pocketbook found on the kitchen table. The pocketbook contained a document identifying the defendant. From the pocketbook, the officer seized (i) a brown or reddish pager; (ii) a "wad" of United States currency in the amount of forty-eight dollars; (iii) a second "wad" of United States currency in the amount of sixteen dollars; (iv) folded inside the second wad of money, two white sheets of paper with handwritten names and numbers; and (v) a metallic cigarette box with the word "Kool" written on it, containing $331 in cash.

A second officer and a narcotics detection dog conducted a search of an upstairs bedroom. As the officer reached the top of the stairs, the bedroom he searched was the first one that he reached, "off to the right"; there was a second bedroom upstairs which he did not search. Inside the first bedroom, the dog drew attention to a jewelry box located on top of a glass table in the

---

[1]Though the record does not include the defendant's motion, the Commonwealth does not dispute that the defendant moved for a required finding at the close of the Commonwealth's case.

[2]Earlier that same day, the police had responded to a call regarding a disturbance at the same unit, and had at that time been present while a man was moving out of the unit.

far right corner of the room. The officer opened a drawer of the jewelry box and found a black film canister that held within it fifteen baggies containing a white powdered substance, later identified as cocaine. In the same drawer of the jewelry box, he also found forty-four dollars in United States currency. The officer turned over the baggies and the money to a police detective, who went downstairs to the kitchen and placed the defendant under arrest.

Thereafter, the second officer and the detective continued searching the bedroom where the cocaine was found. The officers seized several plastic baggies containing loose pills and one white pill not contained in a bag. The baggies were found on a "vanity makeup area," which was "just a mess" with "papers, assorted papers, in file folders . . . and some little knick-knack[s]" on top. The officers also searched an upstairs bathroom where they seized, from the medicine cabinet, a prescription bottle bearing a name different from the defendant's.

In addition, the officers seized from the unit an answering machine containing several messages. Message twelve stated in part, "I hope you saved me two (inaudible) so hopefully you saved me two and (inaudible) okay?" Message thirteen stated in part, "I'm wondering if you had picked those two up with the one-zero-zero I left you." Message fifteen stated, "(Inaudible) I've got your nine-seventeen (inaudible) call me."[3] None of these messages mentioned the defendant by name or otherwise indicated for whom they were intended.

2. *Discussion.* The defendant contends that the Commonwealth's evidence failed to link her to the bedroom in which the drugs were found and otherwise was insufficient for a finding that she possessed the drugs.

"Possession implies 'control and power,' . . . exclusive or joint, . . . or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Rosa,* 17 Mass. App. Ct. 495, 498, *S.C.,* 18 Mass. App. Ct. 247 (1984), quoting from *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 563, 567 (1980).

---

[3]The content of message fifteen is not entirely clear from the transcript. When the same message was played during the defendant's testimony, it was transcribed as, "Call me. It's 9:17, if you have something call me."

"Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985). The defendant's mere presence in the area where contraband is found is insufficient to show "the requisite knowledge, power, or intention to exercise control over the [contraband], but presence, supplemented by other incriminating evidence 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting from *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976).

In assessing a defendant's control over the area where contraband is found, evidence that the defendant "rented, occupied, spent a great deal of time at or exercised control over" a dwelling is relevant, *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689 (1991), though evidence of the defendant's "property interest in the premises" is not required. *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 619 (1990), *S.C.*, 410 Mass. 1005 (1991). When contraband is found in a dwelling shared by more than one person, an inference of possession may be drawn from evidence "that the contraband was found in proximity to personal effects of the defendant in areas of the dwelling, such as a bedroom or closet, to which other evidence indicates the defendant has a particular relationship." *Commonwealth* v. *Rarick*, 23 Mass. App. Ct. 912, 912 (1986).

The Commonwealth presented no evidence in the present case to establish that the defendant exerted constructive possession of the contents of the condominium unit. There was no evidence that the defendant owned or leased the unit, or that the defendant otherwise controlled or even resided at the premises. The defendant's mere presence in the unit at the time of the officers' arrival does not suffice to establish control. Indeed, two other individuals were present when the police arrived, and a third individual had moved out earlier in the day. Contrast *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 402, 410 (1989) (five people present when police arrived, but apartment was rented to defendant). No evidence was introduced to connect the defendant to the personal effects or other contents found in the apartment, other than the materials found in a pocketbook near

where the defendant was sitting in the kitchen. The fact that the defendant answered the door is insufficient to establish her control over the premises. See *Commonwealth* v. *Williams*, 3 Mass. App. Ct. 370, 371 (1975).[4]

More important, the evidence did not connect the defendant to the portions of the condominium unit where drugs were found. See *ibid.* None of the papers or other personal effects found in the bedroom with the drugs was identified as belonging to the defendant. Contrast *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 657 (1974) (papers specifically identified defendant); *Commonwealth* v. *Rarick, supra* at 913 (letters addressed to defendant). There was no other evidence regarding personal effects found in the bedroom or bathroom, see *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556-558 (1991) (bills, papers, and female clothing linked defendant to one bedroom, but not another), or any other evidence linking the defendant to those locations, contrast *Commonwealth* v. *Brzezinski, supra* at 410 (defendant retreated into closet where drugs were found); *Commonwealth* v. *Rodriquez*, 16 Mass. App. Ct. 944, 946 (1983) (defendant seen coming out of bedroom and using clothes from bedroom).[5]

The Commonwealth contends that the materials seized from the defendant's pocketbook — along with certain telephone

---

[4]The Commonwealth's reliance on *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. at 426, is misplaced. Evidence of possession in that case was based not only on the defendant's presence, but on his utterances, which implied the defendant's control over the drugs seized. *Ibid.* Indeed, we noted in *LaPerle* that "it would have been a better practice for the Commonwealth to introduce direct evidence that LaPerle resided in the apartment." *Id.* at 426 n.1.

[5]During oral argument, the Commonwealth contended, based on evidence that another individual had moved out of the condominium unit earlier in the day, that the bedroom belonging to that individual would have been empty; as the bedroom containing the drugs was not empty, the argument continued, it therefore must have belonged to the defendant. We do not find this inference to be warranted by the evidence. As a threshold matter, we have already noted that the evidence did not establish the defendant's residence in the condominium unit. Even assuming that the defendant resided in the unit and, accordingly, occupied one of the bedrooms, the evidence indicated that the other individual moved out when the police were called to respond to a "disturbance" at the premises, and that the police were present while he moved out. The circumstances of his departure (under police supervision) make it unlikely that the other individual would have taken from the unit all *contraband* belonging to him.

messages — demonstrate the defendant's involvement in the sale of drugs and therefore support the inference that the defendant possessed the drugs found at the premises. We disagree. The evidence found in the defendant's pocketbook (cash, a pager, and a list of telephone numbers) was equivocal at best in its relationship to drug-dealing activity. A State trooper who testified as an expert witness conceded that the handwritten lists of names and telephone numbers might not be (as he had opined) "cuff sheets" associated with drug dealing. Moreover, as we have noted, none of the telephone messages introduced by the Commonwealth indicated that they were intended for the defendant. In the absence of any connection between the messages and the defendant, the trooper's testimony that the reference to "one-zero-zero" in message thirteen indicated a request to apply one hundred dollars toward the purchase of two fifty dollar units of cocaine, is irrelevant to establish the defendant's guilt.

Because the evidence presented in the Commonwealth's case was insufficient to support a finding that the defendant possessed the drugs found in the upstairs bedroom, the defendant's motion for a required finding should have been allowed. The judgments are reversed, and the verdicts are set aside.[6]

*So ordered.*

---

[6]In light of our disposition, we need not address the defendant's argument that the State trooper improperly expressed an opinion that the defendant was a drug dealer (rather than that the evidence was "consistent with" such a conclusion).